NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HARTFORD FIRE INSURANCE CO. a/s/o Ariana Fashion, Inc., <br><br> Plaintiff, <br><br> v. <br><br> DYNAMIC WORLDWIDE LOGISTICS, INC., M/V Brussels Bridge V.051E, her engines, boilers, etc. DYNAMIC DELIVERY SERVICES, INC., CECO LOGISTICS, INC. and XYZ Corp., <br><br> Defendants. | Civil Action No: 17-553-SDW-LDW <br><br> **OPINION** <br><br><br> September 5, 2017 |

**WIGENTON**, District Judge.

Before this Court is Defendant CECO Logistics, Inc.'s ("CECO" or "Defendant") Motion to Dismiss Hartford Fire Insurance Co. a/s/o Ariana Fashion, Inc.'s ("Hartford" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367. Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, the Motion to Dismiss is **DENIED**.

1

I.  BACKGROUND AND PROCEDURAL HISTORY

Hartford is a domestic insurance company whose insured/subrogor Ariana Fashion ("Ariana") is in the wholesale clothing business. (Compl. ¶¶ 1-2.) Defendants Dynamic Worldwide Logistics ("DWL"), Dynamic Delivery Services, Inc. ("DDS"), and CECO are all in the business of transporting goods and property. (*Id*. ¶¶ 3-5.) On or about March 16, 2016, Ariana contracted with defendants "to transport a shipment of 425 cartons of ladies' jackets and dresses from Shanghai, China to Los Angeles, California, for ultimate distribution to its customer Macy's." (*Id.* ¶ 11.) Plaintiff alleges that the goods at issue were "tendered to defendants in good order and condition" but were contaminated with mold while being transported between China and various Macy's stores. (*Id.* ¶¶ 12-14.) Approximately 10-15% of the garments, worth $66,497.50, were rendered unusable. (*Id.* ¶¶ 15-16.)

On January 27, 2017, Plaintiff brought suit in this Court alleging that defendants failed to deliver the garments in good order and condition in violation of their contractual duties under state and federal law. (Dkt. No. 1.) On June 15, 2017, CECO filed the instant motion to dismiss. (Dkt. No. 13.)[1] Plaintiff filed timely opposition on July 24, 2017, and Defendant filed its reply on July 31, 2017. (Dkt. Nos. 20, 21.)

II.  LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp.*

---

[1] Although CECO moved under Rule 12(b)(6), its moving papers contain a "Statement of Uncontested Material Facts" and a Declaration from one of CECO's owners attaching an exhibit regarding CECO's licensing status. This Court will confine itself to the facts as set forth in the Complaint in deciding the instant motion to dismiss.

*v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief") (internal citation omitted).

In considering a Motion to Dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (external citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard). Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

### III. DISCUSSION

#### A.

Plaintiff's federal claims allege violations of the Carriage of Goods by Sea Act, 46 U.S.C.A. App. § 1300, et. seq. ("COGSA") (Count One) and the Carmack Amendment, 49 U.S.C. § 14706 (Count Three).

COGSA is intended to "facilitate efficient contracting in contracts for carriage by sea" and "applies to shipments from United States ports to ports of foreign countries, and vice versa."

*Royal SMIT Transformers BV v. HC Bea-Luna M/V*, No. CV 16-14647, 2017 WL 2364362, at *3 (E.D. La. May 31, 2017) (internal citations omitted). The statute applies to "carrier[s] engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702 (formerly cited as 46 App. U.S.C.A. § 195). COGSA defines a "carrier" as "the owner, manager, charterer, agent, or master of a vessel." 46 U.S.C. § 30701. The Carmack Amendment, on the other hand, "provides for the liability of interstate carriers for damage to . . . goods transported." *Phoenix Ins. Co., Ltd. v. Norfolk S. R.R. Corp.* No. CV 11-00398, 2014 WL 2008958, at *6 (D.N.J. May 16, 2014). The Carmack Amendment was "designed to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Id.* at *7; *see also* 49 U.S.C. § 14706 (identifying the title of the statute as "Liability of carriers under receipts and bills of lading"); 49 U.S.C. § 13102 (defining carrier as "a motor carrier, a water carrier, and a freight forwarder").

CECO seeks to dismiss both of Plaintiff's federal claims, alleging that CECO is licensed solely as a "freight broker, which only arranges for transportation but does not actually transport, carry, load, handle, or unload any freight." (Mot. Dismiss at 1.) As such, CECO asserts neither COGSA nor the Carmack Amendment apply to CECO because CECO is not a "carrier." (*Id.* at 1, 9.) At this stage in these proceedings, however, before any discovery has taken place, this Court is bound by the allegations in the Complaint which identify CECO as "a motor carrier authorized . . . to transport property in interstate commerce throughout the 48 contiguous States" that received the goods at issue "in good order and condition" but failed to deliver those goods in the same condition to their destination. (Compl. ¶ 5, 12, 15.) It is inappropriate for this Court to make any factual determinations regarding the precise nature of CECO's business status and/or activities as to the transactions at issue. Plaintiff's allegations are sufficient at this stage in the

proceedings to state a claim under COGSA and the Carmack Amendment; therefore, Defendant CECO's Motion to Dismiss as to Plaintiff's federal claims will be denied.[2]

B.

Plaintiff also raises a common law breach of contract claim against Defendant (Count Two). CECO argues that Plaintiff's breach of contract claim is "barred and pre-empted by Federal law, namely the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Federal Aviation Administration Authorization Act . . . ("FAAAA" or "F4A")." (Mot. Dismiss at 1 (citing 49 U.S.C. § 14501).) Taken together, the FAAAA and the ICCTA preempt many state law claims against motor carriers, transportation brokers, and freight forwarders.[3] *See* 49 U.S.C. § 14501(c)(1).[4] However, the FAAAA and ICCTA do not preempt routine breach

---

[2] Even if this Court were to consider the supplemental materials provided by the parties regarding CECO's licensure/registration, it would still deny Defendant's motion at this time. "Whether a company is a broker or a carrier is not determined by what the company labels itself, but by how it represents itself to the world and its relationship to the shipper." *Hewlett-Packard v. Bros. Trucking*, 373 F. Supp. 2d 1349, 1352 (S.D. Fl. 2005); *see also Phoenix Assurance Co. v. Kmart*, 977 F. Supp. 2d 319, 326 (D.N.J. 1997) (stating that it is a company's relationships and actions, rather than its registration that are dispositive of the company's "true identity"); *Custom Cartage v. Motorola*, No. 98 C 5182, 1999 WL 965686, at *9 (N.D. Ill. Oct. 15, 1999) (noting that "what one labels oneself does not determine one's status"). Without the benefit of discovery, it is impossible to say what role CECO played in the transport of Ariana's goods.

[3] The FAAAA was enacted on August 23, 1994. Pub. L. No. 103-305, 108 Stat. 1569 (1994). The ICCTA was enacted on December 29, 1995 and expanded federal preemption under the FAAAA. Pub. L. No. 104-88, 109 Stats. 803, 804. Because the FAAAA was modeled on the Airline Deregulation Act of 1978 ("ADA"), courts routinely look to the ADA to interpret the preemptive reach of the FAAAA. *See, e.g., Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668-69 (N.D. Ga. 1997) (finding that the FAAAA preemption provision "employs identical language to the preemption provision of the ADA . . ." and "that Congress intended for the preemption provisions of the FAAAA to be applied in an identical manner as the preemption provision of the ADA"); *Yellow Transp., Inc. v. DM Transp. Mgmt. Servs., Inc.*, No. Civ. 06-1517-LDD, 2006 WL 2871745, at *2 (E.D. Pa. July 14, 2006) (treating the ADA's preemption provision as "an analogical template by which to interpret 14501(c)(1) of the ICCTA" and finding that Plaintiff's breach of contract claim was not preempted); 49 U.S.C. § 41713(b)(4)(A) (setting out the ADA's preemptive authority).

[4] The statute provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1).

of contract claims. *See, e.g.*, *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 229-230 (1995) (discussing the scope of the ADA's preemption and finding that the ADA did not bar adjudication of breach of contract claims); *Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 287 (5th Cir. 2002) (holding that the ADA does not preempt breach of contract claims); *Huntington Operating Corp. v. Sybonney Express, Inc.*, No. H-08-781, 2009 WL 2423860, at *1 (S.D. Tex. Aug. 3, 2009) (holding that breach of contract claims are not preempted by § 14501); *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638, 643 (N.D. Tex. Aug. 20, 2010) (determining that 49 U.S.C. § 14501 broadly preempts state law claims except for breach of contract and noting that ICCTA and FAAAA "preemption is not to interfere with contractual obligations between two private parties"). Because the ICCTA and FAAAA do not preempt breach of contract claims, Defendant's motion to dismiss Count Two will be denied.

**IV.  CONCLUSION**

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate order follows.

                                                     /s/ Susan D. Wigenton
                                            **SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Leda D. Wettre, U.S.M.J.
               Parties